**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ROY DEARMORE, individually and as Representative of all owners of Single Family residential property in Garland Texas, MARIE COMBS, individually and as Representative of all tenants of Single Family residential property in Garland, Texas, and A. C. BLAIR, individually and as Representative of all property managers in Garland, Texas,** | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **Civil Action No. 3:05-CV-1231-L** |
| **CITY OF GARLAND,** | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER AND PRELIMINARY INJUNCTION**

Before the court is Plaintiff Roy Dearmore's Amended Motion for Temporary Restraining Order and Motion to Reconsider Court's Denial of Temporary Restraining Order, filed July 1, 2005;[1] and Defendant City of Garland's Motion to Dismiss for Want of Subject Matter Jurisdiction (12(b)(1)) and for Failure to State a Claim (12(b)(6)), filed July 6, 2005. After careful consideration of the request for injunction, the testimony given at the preliminary injunction hearing, argument of counsel, the motions and briefs, response, reply and applicable law, the court **grants in part** Plaintiff's request for a preliminary injunction; **denies as moot** Plaintiff's Amended Motion for

[1] In his motion, Plaintiff requests a temporary restraining order and also a hearing on a preliminary injunction. In his First Amended Complaint, Plaintiff requests a preliminary injunction against enforcement of the ordinance until a final hearing on the merits of the case. The court therefore treats Plaintiff's motion as a motion for preliminary injunction.

Temporary Restraining Order and Motion to Reconsider Court's Denial of Temporary Restraining Order; **denies as moot** City of Garland's Motion to Dismiss for Want of Subject Matter Jurisdiction (12(b)(1)); and **grants in part and denies in part** City of Garland's Motion to Dismiss for Failure to State a Claim (12(b)(6)).

## I. Factual and Procedural Background

Plaintiff Roy Dearmore ("Dearmore" or "Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 against Defendant City of Garland (the "City" or "Defendant") on June 16, 2005.[2] Dearmore requests the court to enjoin the City from enforcing City Ordinance No. 5895 (the "Ordinance") which amends the City's Minimum Housing Code. Dearmore contends that he will suffer irreparable injury if the City is not enjoined. He maintains that the Ordinance violates his Fourth Amendment right by: (1) authorizing warrantless searches of private homes; (2) failing to provide a mechanism to notify the tenant, property owner or property manager of his or her right to refuse to allow the search; and (3) requiring the applicant to disclose private information that violates the right to privacy. Dearmore further contends that the City has violated the Fourteenth Amendment.[3]

Dearmore owns four properties in the City that he rents to various tenants. The City adopted the Ordinance on April 19, 2005. The Ordinance provides two separate and distinct criteria for the permitting of rental property in the City. Section 32.07 provides the criteria for obtaining a Multifamily License – necessary to lease "three or more residential dwelling units to another person or persons which are part of a multifamily dwelling." Garland, Tex., Code of Ordinances ch. 32,

---

[2]Dearmore amended his complaint on July 15, 2005, adding Marie Combs and A.C. Blair as Plaintiffs.

[3]Deamore asserts that his Fourth Amendment claim is applicable to the State via the Fourteenth Amendment. In his Original Complaint, Dearmore also asserted that the Ordinance violated the Fifth Amendment. This claim is omitted in his First Amended Complaint; therefore, it is not before the court.

§ 32.07 (2005). Section 32.09 provides the criteria for obtaining a Single Family Permit – necessary to rent or lease "a single-family residential dwelling." *Id*. § 32.09 (2005).

To obtain a Single Family Permit, the Ordinance requires a person or entity that owns one or more rent houses to: (1) submit an application to operate each rental property; (2) pay the appropriate fee ($65); and (3) post and display the permit in a visible location inside the rental property. *Id*. § 32.09(B)(D). The application and permit fee are to be paid no later than 60 days from the effective date of the Ordinance. *Id.* § 32.09(C). The application is to include the name, address, telephone number and driver's license number of the owner, tenant and property manager. *Id.* § 32.09(B)(1)(a)(c). As a condition of the permit, the City will inspect the property a least once a year. Failure of an owner, who is not a resident at the property, to allow an inspection is an offense. *Id.* § 32.09(F)(1)(3). When consent to inspect has been refused or cannot be obtained, the City is authorized to obtain a search warrant to conduct an inspection. *Id.* § 32.09(F)(4). This section also provides that:

> [N]o search warrant shall be obtained without probable cause to believe that a fire or health hazard or violation or unsafe building condition is present on the premises sought to be inspected. A search warrant is not authorized based solely upon the failure of an owner to obtain a permit under this section.

*Id.*

Dearmore received a letter from the Garland Health Department Code Compliance Division, dated June 10, 2005, advising him of the adoption of the Ordinance and its permit and inspection requirements. The letter stated that owners of rent houses are required to "allow the Health Department access to the exterior and interior of the home for the purposes of determining compliance with all applicable sections of the Code." Affidavit of Roy Dearmore, Exhibit A. The

letter also stated that "[a]s a rule, owners will be given a three to seven day notice of the initial inspection to facilitate scheduling the inspection." *Id.* The letter further stated that "[t]he compliance deadline for submitting a complete application and paying the permit fee is July 11, 2005. Failure to comply with the permit application deadline will result in the issuance of Class C misdemeanor citations carrying fines [] from $100 to $2000 per day."[4] *Id*.

Dearmore filed his Original Complaint and Request for Temporary Preliminary and Permanent Injunctive Relief on June 16, 2005. He also filed a Motion for Temporary Restraining Order. The court denied without prejudice Dearmore's Motion for Temporary Restraining Order. The court determined that Dearmore failed to meet all the prerequisites for a temporary restraining order. On July 1, 2005, Dearmore filed his Amended Motion for Temporary Restraining Order and Motion to Reconsider Court's Denial of Temporary Restraining Order or in the Alternative Request for Expedited Preliminary Injunction Hearing.

The City filed its motion to dismiss on July 6, 2005. The City contends that Dearmore has failed to allege sufficient facts to establish the court's subject matter jurisdiction over his Fifth

---

[4]Section 2 of the Ordinance provides that "[A] violation of any provision of this Ordinance shall be a misdemeanor punishable in accordance with Sec. 10.05 of the Code of Ordinances of the City of Garland, Texas." Section 10.05 of the Code of Ordinances provides:

> Whenever in this [C]ode or in any ordinance of the City an act is prohibited, or is made or declared to be unlawful, or an offense or a misdemeanor, or wherever in such Code or ordinance the doing of any act is required, or the failure to do any act is declared to be unlawful, the violation of any such provision of this Code or any such ordinance shall be punished by a fine of not exceeding two thousand dollars ($2,000.00). . . . Each day or portion of a day any violation of this code or any ordinance shall continue or occur shall constitute a separate offense.

Garland, Tex., Code of Ordinances ch. 10, § 10.05 (2005).

Amendment claims;[5] failed to allege sufficient facts to state a claim upon which relief may be granted as to his substantive due process claim under the Fourteenth Amendment; and failed to establish that he has standing to assert his Fourth Amendment claim. A preliminary injunction hearing was held on July 7, 2005. The court now considers the request for injunctive relief and the motion to dismiss.

## II. Applicable Standards of Law

### A. Preliminary Injunction

There are four prerequisites for the extraordinary relief of a temporary restraining order or preliminary injunction. To prevail, Plaintiff must demonstrate: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm, for which he has no adequate remedy at law; (iii) that greater injury will result from denying the temporary restraining order than from its being granted; and (iv) that a temporary restraining order will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise

[5]The City contends that Dearmore has failed to plead sufficient facts to establish this court's subject matter jurisdiction over his Fifth Amendment claims that his property has been taken without just compensation and that the Ordinance violates his due process rights. Dearmore amended his complaint on July 15, 2005, after the City filed its motion to dismiss. *See* First Amended Original Complaint, Docket No. 20. The amended complaint does not include a Fifth Amendment claim, and this claim is no longer before the court. As the basis for the City's motion to dismiss for want of subject matter jurisdiction is Deamore's Fifth Amendment claim, the City of Garland's Motion to Dismiss for Want of Subject Matter Jurisdiction (12(b)(1))is **denied as moot**.

stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction.

**B. Rule 12(b)(6) Failure to State a Claim**

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every

doubt resolved in favor of the plaintiff. *Lowrey*, 117 F.3d at 247. A plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

## III. Analysis

### A. Introduction

Dearmore contends that the Ordinance violates the Fourth Amendment by: (1) authorizing warrantless searches of private homes; (2) failing to advise the tenant or owner that he does not have to consent to a search; and (3) requiring private information in the application process. *See* First Amended Original Complaint at 6-7. The City maintains that Dearmore's Fourth Amendment claims fail because he has failed to allege sufficient facts to state a claim upon which relief may be granted. Specifically, the City contends that Dearmore: (1) has no standing to challenge the Ordinance under the Fourth Amendment; (2) makes a facial challenge to the Ordinance and the Ordinance is facially valid; and (3) has failed to assert any facts to demonstrate that he has a subjective expectation of privacy in the property that he leases to third parties.

The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

**B. <u>Standing</u>**

A party has standing if: (1) he has suffered a "concrete and particularized" injury that is actual or imminent rather than conjectural or hypothetical; (2) there is a causal relationship between the injury and the challenged conduct; and (3) it is likely and not merely speculative that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Westfall v. Miller*, 77 F.3d 868, 871 (5th Cir. 1996). The City contends that Dearmore does not have standing because he, as a non-resident landlord, does not have a reasonable expectation of privacy in residential property leased to a tenant, and he is not required to give consent for the tenant. The court agrees that the property owner has no expectation of privacy if the property is leased. *See United States v. Dyar*, 574 F.3d 1385, 1390 (5th Cir. 1978), *cert. denied,* 439 U.S. 982, 99 (1978) (an owner of a leasehold interest in an aircraft had no expectation of privacy, and therefore lacked standing, when possession of the aircraft was given to another). If, however, the rental property is not occupied, the only logical person who would have standing and an expectation of privacy would be the owner of the property. The property owner therefore has not relinquished his standing or expectation of privacy in situations where the property is not occupied.

Moreover, a property owner's rental property is commercial property. Indeed, it would be fatuous to argue otherwise, as rental property is property which is put in the stream of commerce for economic purposes. The Supreme Court has recognized that the Fourth Amendment's prohibition of unreasonable search and seizures is applicable to commercial premises as well as private residences. *See New York v. Burger*, 482 U.S. 691, 699 (1987). As the court stated in *Burger*:

> An owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable. This expectation exists not only with respect to traditional police searches conducted for the gathering of criminal

> evidence but also with respect to administrative inspections designed to enforce regulatory statutes.

*Id*. (internal citations omitted). Although Dearmore does not reside at his rental properties, the court views his ownership interest in his rental property as that of the owner of a commercial business, as it is used for commercial purposes. As such, he has a reasonable expectation of privacy in his rental property. *See v. City of Seattle,* 387 U.S. 541, 543 (1967). In that case, the Court stated:

> The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property. The businessman, too, has that right placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant.

*Id.*

The Fourth Amendment prohibition against unreasonable searches protects against warrantless intrusions during civil as well as criminal investigations. *Marshall v. Barlow's Inc.*, 436 U.S. 307, 312 (1978). "If the government intrudes on a person's property, the privacy interest suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards." *Id*.

Under the terms of the Ordinance, in order to rent his property, an owner must obtain a permit. If a permit is not obtained, the owner cannot make commercial use of rental property without incurring a substantial penalty. When the owner applies for a permit, he must agree to abide by the Ordinance. The Ordinance requires that the owner consent to an annual inspection of his rental property whether it is occupied or not, as long as he is not the occupant. It is an offense if an owner rents his property without a permit. It is also an offense if an owner refuses to allow an inspection by the City. An owner, therefore, can be fined up to $2000 per day for renting his

property without a permit. He may also be fined up to $2000 per day for refusing to allow an inspection of his rental property. Dearmore thus has a concrete injury that is actual or imminent – involuntary consent in order to receive a permit or risk being cited for a separate offense for each day he is not in compliance. Although the City has not cited Dearmore for an offense, it could do so at any time, which makes the injury imminent rather than conjectural or hypothetical. Dearmore must consent in advance to the annual inspection, even if the property is unoccupied. There is a causal relationship between Dearmore's injury and the enforcement of the Ordinance; and the injury is likely to be redressed by a favorable decision in this action. Dearmore therefore has standing to bring this action challenging the constitutionality of the Ordinance with respect to the provisions that require him to consent to the inspection in order to receive a permit or be cited for an offense. *See generally Lujan*, 504 U.S. at 560-61. As the court determines that Dearmore has standing, it now addresses the City's argument that Dearmore has failed to state a valid claim upon which relief can be granted.

### C. Warrantless Administrative Searches

Dearmore contends that the Ordinance's requirement that he consent to a warrantless inspection of his property in order to obtain a rental permit violates the Fourth Amendment. The City counters that the only person required to consent to an inspection is a non-resident owner, and such owner has no Fourth Amendment protection in non-owner occupied rental premises because he has no reasonable expectation of privacy. The City maintains that the tenant can still refuse the warrantless search. The City is correct insofar as its arguments goes; however, the City's argument falls short in that the Ordinance provides no safeguards or protections in those situations when the rental property is unoccupied. The Ordinance simply does not take into account such situations.

If the property is unoccupied, the only logical person to have standing is the owner or someone authorized to act on behalf of the owner regarding the property in question.

The leading case on the issue of warrantless administrative searches is *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523 (1967). *Camara* involved a tenant who refused to consent to an inspection of his property by municipal housing officials. The tenant was arrested for refusing to allow a lawful inspection. *Id.* at 526. The tenant argued that the section of the housing code that authorized municipal officials to enter a private dwelling without a search warrant and without probable cause to believe that a violation of the housing code existed was a violation of the Fourth and Fourteenth Amendment. *Id*. at 527. The Supreme Court agreed and held that warrantless searches of residential property by municipal inspectors violated the Fourth Amendment protection against unreasonable searches and seizures. *Id*. at 528. The Court reasoned that "administrative searches of the kind at issue here are significant intrusions upon the interest protected by the Fourth Amendment, that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual[.]" *Id*. at 534. The Court acknowledged the strong governmental interest in inspecting for housing code violations and established standards for obtaining administrative search warrants to inspect for such violations. *Id.* at 538-40. The Court concluded that probable cause to issue an administrative warrant exists if reasonable legislative or administrative standards for conducting the inspection are satisfied with respect to a particular dwelling. *Id.* Factors to be considered include the passage of time, the nature of the building, or the condition of the entire area. *Id.* The Court, however, went on to conclude that reasonableness is the ultimate standard. *Id.*

The City maintains that *Camara* is inapplicable here because *Camara* involved the tenant's refusal to allow a warrantless inspection of his residence, and that its Ordinance only requires that non-resident owners consent to an inspection. The parties do not cite any Fifth Circuit authority on the issue of warrantless administrative searches of residences used for commercial purposes, and the court was unable to find any.[6] Although no Fifth Circuit authority directly on point was located, the court believes the parties could have been more direct and forceful in presenting their respective cases and providing the court with the necessary research. Such failure unnecessarily caused the court to expend scarce judicial resources.

Upon reviewing *Camara*, the parties' authorities and arguments, and conducting its independent research, the court disagrees with the City that *Camara* is inapplicable here. *Camara* makes no distinction between owner and tenant, but rather holds that an administrative search of a private residence, including a private residence owned by one person and rented by another, must include a warrant procedure. In this case the City ignores that the permitting process does not allow the owner to refuse consent when the property is unoccupied without being subject to criminal penalties, which can be quite substantial. *The court finds the City's reasoning unpersuasive because the property owner is being penalized for his failure to consent in advance to a warrantless search of unoccupied property. The property owner's consent thus is not voluntary at all*. A valid consent

---

[6]The City cites cases from the Sixth and Ninth Circuits to support its contention that non-resident landlords do not have a reasonable expectation of privacy in residential areas they have leased to others. *See United States v. Shamaeizadeh*, 80 F.3d 1131, 1139 (6th Cir. 1996); *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 544 (6th Cir. 2003), *cert denied*, 541 U.S. 1041(2004); *Bonds v. Cox*, 20 F.3d 697, 701 (6th Cir. 1994); *LPI Downtown Investors 1 v. Hahn*, 139 F.3d 906 (9th Cir.), *cert. denied*, 525 U.S. 1002 (1998). Dearmore offers authority from New York, Indiana, Ohio, California and Illinois for his position that requiring a property owner to consent to a warrantless inspection of his property in order to obtain a rental permit is a violation of the Fourth Amendment. *See Sokolov v. Freeport*, 52 N.Y.2d 341, 420 N.E.2d 55 (1981); *Currier v. City of Pasadena*, 48 Cal. App. 3d 810, 121 Ca. Rptr. 913 (1975); *Wilson v. City of Cincinnati*, 346 N.E. 2d 666 (Ohio 1976); *City of Vincennes v. Emmons*, 817 N.E.2d 291 (Ct. App. – Indiana 2005); *Brower v. Bolingbrook*, 735 F.Supp. 768 (N.D. Ill 1990).

involves a waiver of constitutional rights and must be voluntary and uncoerced. *See United States v. Santiago*, 410 F.3d 193, 198-99 (5th Cir. 2005); *United States v. Olivier-Becerril*, 861 F.2d 424, 425 (5th Cir.1988). The alternatives presented to the property owner are to consent in advance to a warrantless inspection, or to face criminal penalties; thus consent is involuntary. On the other hand, if the owner does not consent to the warrantless search, he does not receive a permit. The whole purpose of receiving a permit is to rent the property for commercial purposes. Without a permit, the owner cannot engage in lawful commercial activity. The owner is thus faced with equally unavailing situations.

While the City has shown a strong governmental need or interest to make such a requirement in most instances to protect the public health, safety and welfare, the court believes the Ordinance goes too far with respect to those situations in which the rental property is not occupied by a tenant. By way of example, the court provides the following illustration:

> A property owner obtains a permit and leases his property to a tenant beginning January 6, 2006. The City inspects the property in March 2006. The tenant moves out in November and the property is vacant. The following January, the owner obtains a new permit with the intent to lease to a new tenant. The City seeks to conduct its annual inspection in March 2007, although the property is still vacant.

Under the regulatory scheme established under the Ordinance, the property owner must consent in advance to the inspection, no matter how unreasonable the search or inspection.

Another illustration also identifies the overbreadth of the City's Ordinance. Consider the following situation:

> A property owner obtains a permit on January 6, 2006. The tenant moves in on February 1, 2006, and moves out in May 2006. The City did not inspect the property prior to the tenant vacating the premises. The City decides to inspect the property in June 2006, and the owner

> cannot refuse to consent to the inspection of the vacant property, regardless of the necessity or reasonableness of the inspection.

With respect to either hypothetical, the City's argument is that the owner has no expectation of privacy and cannot refuse the inspection. "This dog will not hunt," and the argument is clearly contrary to the Supreme Court's holding in *New York v. Burger*, 482 U.S. at 699, in which it states that an owner or operator of a business has an expectation of privacy in commercial property. Inspections and searches of unoccupied property would clearly infringe on the property owner's right under the Fourth Amendment to the United States Constitution to be free from unreasonable search and seizure. In these limited situations, where the property is unoccupied, the protections guaranteed by the Fourth Amendment to the United States Constitution to the property owner outweigh any interest that the government has in protecting the health, safety or welfare of the public. If it becomes necessary to inspect unoccupied properties, the City could readily, with a modicum of effort, obtain an administrative search warrant to inspect any property that may pose a danger to the public. The ease with which the City could acquire an administrative search warrant makes unnecessary the need for the City to require property owners to forego in advance their rights guaranteed by the Fourth Amendment. The court fully understands that the City has a valid and important governmental interest in protecting the public, however, the court sees no reason why this should be done at the expense of infringing on rights guaranteed by the Fourth Amendment to the United States Constitution.

In the limited circumstances previously set forth, the court does not believe that a property owner's lot is so hapless that it places him or her between Scylla and Charybdis.[7] Here the equally

---

[7]According to Greek mythology, Scylla was originally a beautiful nymph who was later turned into a monster by Circe, an enchantress. Glaucus, a sea god, fell in love with Scylla; however, she wanted no part of him. When Scylla rebuffed Glaucus's efforts to spark her, he enlisted the aid of Circe to persuade Scylla

repugnant choices, or the "between a rock and a hard place" dilemma, for the owner of rental property are: (1) the denial of a permit for refusing to consent to the inspection and thus loss of the ability to make commercial use of one's property for economic gain; (2) the withdrawal of consent, which will result in the imposition of substantial monetary fines for refusing to allow the inspection; or (3) consent in advance to the warrantless search or inspection, regardless of the necessity of such an inspection or search.

The court determines that in order to comply with the requirements of *Camara* and the protections of the Fourth Amendment, the Ordinance must give the landlord the opportunity to refuse to consent if the property is unoccupied and include a warrant procedure to be followed in the event the landlord refuses. Because the Ordinance does not allow the landlord an opportunity to refuse consent, or include a warrant procedure if consent is refused, section 32.09(F) of the Ordinance is likely to be held unconstitutional. To hold otherwise would give the City carte blanche authority to conduct searches and inspections with impunity or without any type of safeguards on property in which the owner clearly has an expectation of privacy.[8]

For the reasons stated herein, accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to Dearmore, the court cannot say that it appears beyond

---

that she should love him. Circe, however, had ideas of her own and tried to convince Glaucus to love her instead of Scylla. When Glaucus spurned Circe's amorous efforts, she became enraged and turned Scylla into a monster to spite Glaucus.

After being turned into a monster, Scylla lived in a cave overlooking the Strait of Messina, which separates the island of Sicily from Italy. Immediately opposite the cave where Scylla lived was the whirlpool Charybdis. When mariners navigated the Strait of Messina, they were faced with equally repugnant alternatives of either (1) being devoured by Scylla, or (2) being sucked into and drowned by the deadly waters of the whirlpool Charybdis, which is the proverbial "between a rock and a hard place" dilemma.

[8]Dearmore has established that no set of circumstances exist under which section 32.09(F) of the Ordinance would be valid with respect to warrantless administrative searches of unoccupied property. Accordingly, Dearmore has mounted a successful facial challenge to this provision of the Ordinance. *See United States v. Robinson*, 367 F.3d 278, 290 (5th Cir. 2004).

doubt that Dearmore can prove no set of facts in support of his claim which would entitle him to relief. Dearmore thus states a valid cause of action against the City, and the City's motion to dismiss as to Plaintiff's Fourth Amendment claim should be denied.

### D. Right to Privacy

Dearmore contends that the Ordinance's requirement that the applicant disclose his name, address and driver's license number and those of the tenant in a public document violates his right to privacy. Dearmore offers no authority in support of this contention. The City maintains that even if Dearmore has a constitutional right to privacy that would protect his driver's license number, the number is protected from disclosure under Texas law. The court agrees.

Pursuant to Tex. Government Code § 552.130(a), the following information is excepted from public disclosure:

> (1) a motor vehicle operator's or driver's license or permit issued by an agency of this state;
> (2) a motor vehicle title or registration issued by an agency of this state; or
> (3) a personal identification document issued by an agency of this state or a local agency authorized to issue an identification document.

*Id.* In *Whalen v. Roe*, 429 U.S. 589, 599-606 (1977), the Supreme Court stated that privacy interests are adequately protected if there are statutes that provide safeguards against disclosure of personal information collected by the government. As there is a statute that adequately safeguards Dearmore and his tenant's driver's license numbers, and Dearmore has not alleged that this or any other private information has been disclosed by the City, he can prove no set of facts in support of his violation of right to privacy claim which would entitle him to relief. Accordingly, the City's motion to dismiss as to this claim should be granted.

## IV. Conclusion

For the reasons stated herein, the court **denies as moot** Defendant City of Garland's Motion to Dismiss for Want of Subject Matter Jurisdiction (12(b)(1)); **denies** Defendant City of Garland's Motion to Dismiss for Failure to State a Claim (12(b)(6)) as to Plaintiff Roy Dearmore's claim that City of Garland Ordinance No 5895 is unconstitutional because it provides for warrantless searches of private homes and commercial property; and **grants** Defendant City of Garland's Motion to Dismiss for Failure to State a Claim (12(b)(6)) as to Plaintiff Roy Dearmore's claim that the Ordinance violates his constitutional right to privacy by requiring that he disclose his name, address and driver's license number and those of the tenant in the application, and this claim is **dismissed with prejudice** for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## V. Preliminary Injunction

For the reasons stated in Section III (B)and (C), which are incorporated in this section by reference as if repeated verbatim, the court determines that Dearmore has demonstrated a substantial likelihood of success on the merits as to his claim that the Ordinance will violate the Fourth Amendment's protection from unreasonable searches by requiring that the owner of rental property consent in advance to an annual inspection in order to receive a permit, and citing an owner for an offense if he refuses to consent. Dearmore has also demonstrated a substantial threat of immediate and irreparable harm, for which he has no adequate remedy at law, because in order to receive a permit he must agree to abide by all the provisions of the Ordinance, which includes agreeing in advance to a warrantless inspection. Dearmore also is subject to being fined, or even arrested, for a misdemeanor violation. Each day for which he is not in compliance or violates the Ordinance constitutes a separate offense. Dearmore has further demonstrated that granting a preliminary

injunction will subject the City to minimal harm, if any, while protecting him from irreparable harm which could not otherwise be adequately remedied at law. The City, with minimal effort, may amend its ordinance to include the owner's right of refusal of an inspection and include a warrant requirement upon that refusal. The court determines that the effect, if any, on the City's regulatory scheme would be negligible. Finally, Dearmore has demonstrated that a preliminary injunction will not disserve the public interest, as enjoining the enforcement of an unconstitutional provision of the Ordinance promotes rather than disserves the public interest. Enjoining such enforcement ensures that private citizens will not be subject to unconstitutional actions by the City. Moreover, constitutional violations should be enjoined as soon as practicable; otherwise, the Constitution is of little value.

Accordingly, the court **grants** Plaintiff Roy Dearmore's request for a preliminary injunction as to section 32.09(F) of the Ordinance that requires a person who rents or leases a single-family dwelling to allow an inspection of the rental property as a condition of issuing a permit, and that criminally penalizes a lessor for refusing to allow an inspection; and **denies as moot** Plaintiff Roy Dearmore's Amended Motion for Temporary Restraining Order and Motion to Reconsider Court's Denial of Temporary Restraining Order.

As Dearmore has established the four prerequisites for a preliminary injunction, the court hereby **enjoins** the City from **enforcing** any provision of section 32.09 of the Ordinance that requires a person who rents or leases a single-family dwelling to allow an inspection of the rental property as a condition of issuing a permit, or penalizes the lessor for refusing to allow an inspection. This preliminary injunction does not affect the remainder of the Ordinance, as the court

determines that the Ordinance, without the offensive provisions, can function independently. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987).

The court hereby **sets a bond** in the amount of **$5,000**, and this preliminary injunction shall not become effective until Plaintiff Roy Dearmore tenders to the clerk of the court the sum of **$5,000** cash, or a bond for **$5,000** in a form approved by the clerk of the court, in compliance with Fed. R. Civ. P. 65(c).

This preliminary injunction **shall remain in effect** until a trial is conducted on the merits, or until it is otherwise modified by the court. This injunction is **issued** at 1:40 p.m. on November 3rd, 2005.

**It is so ordered** this 3rd day of November, 2005.

Sam A. Lindsay
United States District Judge