IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ROY DEARMORE**, individually and as Representative of all owners of Single Family residential property in Garland Texas, **MARIE COMBS**, individually and as Representative of all tenants of Single Family residential property in Garland, Texas, and **A. C. BLAIR**, individually and as Representative of all property managers in Garland, Texas, | § § § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:05-CV-1231-L |
| **CITY OF GARLAND**, | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Rule 59(e) Motion to Amend Judgment, filed December 12, 2005. After careful consideration of the motion, briefs, responses, reply, supplemental briefs, record, hearing, and applicable law, the court **denies** Defendant's Rule 59(e) Motion to Amend Judgment.

## I. Background

Plaintiff Roy Dearmore ("Dearmore") filed this action pursuant to 42 U.S.C. § 1983 against Defendant City of Garland (the "City") on June 16, 2005.[1] Dearmore requested the court to enjoin the City from enforcing City Ordinance No. 5895 (the "Ordinance") which amended the City's

_____

[1]Dearmore amended his complaint on July 15, 2005, adding Marie Combs and A.C. Blair as Plaintiffs.

**Memorandum Opinion and Order - Page 1**

Minimum Housing Code.  Dearmore contended that he would suffer irreparable injury if the City were not enjoined.  He maintained that the Ordinance violated his Fourth Amendment rights by:  (1) authorizing warrantless searches of private homes; (2) failing to provide a mechanism to notify the tenant, property owner or property manager of his or her right to refuse to allow the search; and (3) requiring the applicant to disclose private information that violated his right to privacy.  Dearmore further contended that the City had violated the Fourteenth Amendment.[2]

On November 3, 2005, the court issued a Memorandum Opinion and Order and Preliminary Injunction enjoining the City from enforcing any provision of section 32.09 of the Ordinance that required a person who rented or leased a single-family dwelling to allow an inspection of the rental property as a condition to issuing a permit, or that penalized the lessor for refusing to allow an inspection of the property.  The preliminary injunction was not to become effective until a $5,000 bond was posted by Dearmore.  Dearmore did not post the bond.

On November 12, 2005, twelve days after the court issued its preliminary injunction, the City passed Ordinance No. 5957, amending section 32.09(F) and removing the requirements that a landlord consent to a warrantless inspection and that a person (landlord) who rents or leases a single-family dwelling allow an inspection of the rental property as a condition to the issuance of a permit.  Immediately after the amendment to the Ordinance, the City filed a motion to dismiss the lawsuit

---

[2]Deamore asserted that his Fourth Amendment claim was applicable to the State via the Fourteenth Amendment. In his Original Complaint, Dearmore also asserted that the Ordinance violated the Fifth Amendment. This claim was omitted in his First Amended Complaint; therefore, it was not before the court. In any event, a reading of the First Amended Complaint readily reveals that the essence of this lawsuit is based on the Fourth Amendment claim; it was the big-ticket item of the lawsuit.  As Dearmore received a favorable ruling on it, the court determined that costs should be taxed against the City.  This is totally consistent with existing precedent. With respect to costs, Fed. R. Civ. P. 54(d)(1) provides that "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Rule 54(d) creates a strong presumption that the prevailing party will be awarded costs. *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985).  No reason existed for the court not to follow this precedent.

**Memorandum Opinion and Order - Page 2**

as moot.  On November 30, 2005, the court issued an order (1) granting the City's motion to dismiss, (2) holding that Dearmore was a "prevailing party" to the extent the court declared section 32.09(F) to be in violation of the Fourth Amendment, and (3) dissolving the preliminary injunction.  On the same day, the court also issued a judgment dismissing this action, and taxed all allowable and reasonable costs against the City.

In its motion to amend the judgment, the City contends that Dearmore is not the "prevailing party" in this litigation, and that the court should therefore amend its judgment to reflect that he is not the "prevailing party" and to retax costs to the party incurring them.  Dearmore disagrees and contends that he is the "prevailing party."  He contends that he is a "prevailing party" because he has obtained some relief on the merits of his claim and that the injunctive relief altered the legal relationship between the parties.

## II.  Legal Standard for Relief under Fed. R. Civ. P. 59(e)

Under Rule 59(e), "[m]otions . . . to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence."  *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (citations omitted).  Such motions may not be used to relitigate issues that were resolved to the movant's dissatisfaction.  *Forsythe v. Saudi Arabian Airlines Corp*., 885 F.2d 285, 289 (5th Cir. 1989).  A Rule 59 motion may not be used to relitigate old matters, raise arguments, or present evidence that could have been raised  prior to entry of judgment.  *See generally* 11 C. WRIGHT, A. MILLER & M. KANE § 2810.1 at 127-28 (2d ed. 1995); *see also Simon*, 891 F.2d at 1159.  With respect to newly discovered evidence, a court may not grant such a motion unless the movant establishes: "(1) the facts discovered are of such a nature that they would probably change the outcome; (2) the alleged facts are actually newly discovered and could not have

been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching." *Infusion Resources, Inc. v. Minimed, Inc.*, 351 F.3d 688, 696-97 (5th Cir. 2003). District courts have "considerable discretion in deciding whether to grant or deny a motion to alter a judgment." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995).  In exercising this discretion, a district court must "strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts." *Id*.  With this balance in mind, the Fifth Circuit has observed that Rule 59(e) "favor[s] the denial of motions to alter or amend a judgment." *Southern Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

## III.  <u>Analysis</u>

The City premises its argument that Dearmore is not a "prevailing party" on the Supreme Court's decision in *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598 (2001), which rejected the "catalyst theory"[3] as a permissible basis to award attorney's fees under a federal fee-shifting statute.[4]  The City is the party that asserts Dearmore is seeking to establish "prevailing party" status through the "catalyst theory."  Dearmore makes no such assertion.  The question presented to the Court in *Buckhannon* was whether the term "prevailing party" "includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id*. at 600.  For the reasons set forth herein, the court believes that the City reads *Buckhannon* much too broadly, and the "catalyst theory" is not

---

[3]Under the "catalyst theory," "a plaintiff is a 'prevailing party' if [such plaintiff] achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon*, 532 U.S. at 601.

[4]Since Dearmore filed this action pursuant to 42 U.S.C. § 1983, the applicable fee-shifting statute to determine whether he is a "prevailing party" is 42 U.S.C. § 1988(b). *See* 42 U.S.C. § 1988(b).

the basis on which Dearmore would be considered a "prevailing party" under the specific facts of this case.

In *Buckhannon*, the state fire marshal issued citations to a number of residential-care facilities for allegedly violating a state law which required all residents of residential board and care homes to be capable of "self-preservation," or be capable of moving themselves from situations which presented imminent danger.  These citations, or "cease-and-desist" orders, required the residential care facilities to close their facilities within 30 days of the issuance of citation.  A lawsuit ensued on behalf of a number of the facilities against the State of West Virginia, two of its agencies, and eighteen individuals.  Defendants agreed to stay enforcement of the cease-and-desist orders, and the parties proceeded to take discovery.  The following year, the state legislature deleted the "self-preservation" requirement in the statute.  After the district court dismissed the action for mootness, the residential-care facilities sought attorney's fees under the "catalyst theory."  *Id.* at 600-01.  The Court ultimately held that the "catalyst theory" was not "a permissible basis for the award of attorney's fees" under the two federal statutes in question.  *Id.* at 610.

As the Court recognized, "a 'prevailing party' is one who has been awarded *some* relief by the court."  *Id.* at 603.  The City acknowledges that neither the Supreme Court nor the Fifth Circuit has addressed whether a preliminary injunction creates a sufficient material alteration of the legal relationship between the parties to allow a determination that a plaintiff qualifies as a "prevailing party."  The court determines that the preliminary injunction obtained by Dearmore *in this case* satisfies the "prevailing party" standard.

The City is correct that the preliminary injunction never became effective because no bond was posted by Plaintiffs.  According to the City, Dearmore failed to take the necessary steps to

**Memorandum Opinion and Order - Page 5**

effectuate any changes made possible through the injunction.   The City argues that the legal relationship between the parties was never materially altered because Dearmore was never entitled to enforce the injunction against the City.

This argument is fundamentally flawed, is disingenuous, and reflects "dirty pool" on the part of the City.  The record amply reveals that Dearmore did not seek to post a bond on the preliminary injunction because the City's legal counsel told and convinced Dearmore's counsel that no injunction was necessary, as the City would amend the Ordinance to address the court's concerns. The City's counsel does not dispute that he made this statement or representation to Dearmore's counsel.  Dearmore's counsel relied on this representation, and that the City now seeks to use it to Dearmore's detriment is simply astounding.  The essence of this is that the City did not want the preliminary injunction to become effective; so its legal counsel informed Dearmore's counsel that the City would change the Ordinance to delete the constitutionally offensive provisions.  Based on the representation of the City's legal counsel to Dearmore's counsel, Dearmore's action in not posting a bond was quite reasonable.  Under these circumstances, rather than incur unnecessary expenses and increase litigation costs, Dearmore, through his counsel, "took the City's counsel at his word."  The court can think of no reason to increase litigation costs unnecessarily, or engage in needless litigation.

Contrary to its assertions, the City did not voluntary change or amend the Ordinance; it changed the Ordinance because of the court's Memorandum Opinion and Order and Preliminary Injunction.  The totality of the court's opinion and its tone apprised the parties that certain provisions of the Ordinance were clearly offensive to the United States Constitution and would not pass constitutional muster.  While it is true that the court stated, "[b]ecause the Ordinance does not allow

the landlord an opportunity to refuse consent, or include a warrant procedure if consent is refused,

section 32.09(F) of the Ordinance is likely to be held unconstitutional," *see* Memorandum Opinion

and Order and Preliminary Injunction at 15, that language was used to conform to the standard

necessary for the issuance of a preliminary injunction.  The court certainly could have used much

stronger language, and, in retrospect, it should have, but the court used euphemistic language in part

of its ruling to "let the City down easy."  If this was a mistake, the court assures the City it will not

happen again.  Moreover, the language to which the City refers cannot be read in a vacuum.  Other

parts of the court's opinion unequivocally put the City on notice that the Ordinance was

constitutionally infirm.  Specifically, the court stated:

> Inspections and searches of unoccupied property would clearly
> infringe on the property owner's right under the Fourth Amendment
> to the United States Constitution to be free from unreasonable search
> and seizure.  In these limited situations, where the property is
> unoccupied, the protections guaranteed by the Fourth Amendment to
> the United States Constitution to the property owner outweigh any
> interest that the government has in protecting the health, safety or
> welfare of the public.  If it becomes necessary to inspect unoccupied
> properties, the City could readily, with a modicum of effort, obtain
> an administrative search warrant to inspect any property that may
> pose a danger to the public.  The ease with which the City could
> acquire an administrative search warrant makes unnecessary the need
> for the City to require property owners to forego in advance their
> rights guaranteed by the Fourth Amendment.  The court fully
> understands that the City has a valid and important governmental
> interest in protecting the public, however, the court sees no reason
> why this should be done at the expense of infringing on rights
> guaranteed by the Fourth Amendment to the United States
> Constitution.

Memorandum Opinion and Order and Preliminary Injunction at 14.  The City was aware of its soon-

to-be unpleasant fate, which is why it acted with dispatch to amend the Ordinance.[5]  Under these

---

[5]Twelve days is a short period of time for the council to act and pass an ordinance, considering that
City officials had to discuss the proposed Ordinance among themselves, brief the Garland City Council at

circumstances, it strains credulity and requires a quantum leap of logic to assert that the City *voluntarily* changed the Ordinance.

The situation here is quite different from that which faced the parties in *Buckhannon*. In *Buckhannon*, there was no judicial determination or grant of injunctive relief, as in this case, to cause a party to modify its conduct.  In *Buckhannon*, the defendants ceased their allegedly improper conduct by agreement merely because a lawsuit had been filed, not because of judicial intervention. This court has an extremely difficult time comprehending how the City can characterize conduct as "voluntary" when a ruling makes clear that the Ordinance is constitutionally infirm and it acts immediately to address the court's concerns and rectify the constitutionally repugnant provisions. Stated another way, but for this court's ruling and granting the preliminary injunction, the City would *not have acted* to delete the offensive portions of the Ordinance.  Accordingly, the necessary judicial imprimatur is present in this case for Dearmore to meet the standard for a "prevailing party." It was not present in *Buckhannon*.  Moreover, as a result of the court's ruling and the City acting in direct response to that ruling, Dearmore obtained what he sought – relief from the Ordinance which violated the Constitution.  There is no doubt that the relationship between Dearmore and the City has been materially altered.  To say otherwise merely exalts form over substance.

The court fully recognizes that a preliminary injunction is ordinarily not a decision on the merits; but in this case, it is the functional equivalent of a ruling on the merits because of the manner and the circumstances under which the City amended the Ordinance.  As previously stated, the City, as any intelligent party would, saw "the handwriting on the wall" in light of the court's opinion and

some point on the amended Ordinance, place it on the agenda for official council action, and post notice of the meeting and the agenda to the public at least 72 hours before the start of the meeting at which the council would take official action on the proposed Ordinance.  *See* Tex. Gov't Code Ann. § 551.043 (Vernon Supp. 2005)

**Memorandum Opinion and Order - Page 8**

injunction.  There is no doubt in the court's mind that the City resorted to the use of legal legerdemain in an effort to avoid the inevitable and, in the process, convinced Dearmore that he need not take steps to make the injunction effective by posting a bond because the City was going to amend its Ordinance to make it constitutionally sound.  Rather than press the court to expedite or advance the trial on the merits, Dearmore graciously relied on the City's assurance that it would amend the Ordinance, which would moot the case.  This is precisely what happened in *Palmetto Properties, Inc. v. County of Dupage*, 375 F.3d 542 (7th Cir. 2004), after the court had granted a motion for partial summary judgment.[6]  The county contended that Palmetto was not a "prevailing party" because the partial summary judgment never became final or enforceable, as the case was dismissed for mootness.  *Id*. at 549.  The Seventh Circuit did not accept the county's argument, determined that Palmetto was a "prevailing party," and refused to reverse the district court's award of attorney's fees.  *Id*. at 550.  The court finds this reasoning solid and equally applicable to the facts of this case.

On occasion, the City has attempted to minimize the effect and importance of the court's ruling by referring to it as a "preliminary opinion."  The court's ruling was "preliminary" only in the sense that it dealt with a preliminary injunction.  The facts of this case were undisputed, and the only matters to resolve were the legal issues.  The court's Memorandum Opinion and Order and Preliminary Injunction made a substantive determination regarding the unconstitutionality of certain provisions of the Ordinance and left no doubt as to the resolution of the legal issues.  The City knew this, which is why it pursued the course of action it did in amending the Ordinance.

---

[6]That *Palmetto* involved a partial summary judgment and this case involves a preliminary injunction is really of no moment, given the special circumstances of this case.

**Memorandum Opinion and Order - Page 9**

Finally, the City contends that it was not given proper notice before the court granted the preliminary injunction and that the propriety of the preliminary injunction was "legally problematic." Specifically, the City contends that it was not given an opportunity "to fully present its views on the merits of the legal issues addressed by the Court's Preliminary Injunction." City of Garland's Rule 59(e) Motion to Amend Judgment at 6.

The court does not understand the basis for this argument. The City, as reflected in its motion to amend judgment, knew that Dearmore sought to enjoin enforcement of the Ordinance in question. Moreover, as the City correctly points out, after the court initially denied Plaintiff's Request for Temporary Restraining Order, Dearmore filed an amended motion for a temporary restraining order and requested the court to reconsider its earlier denial of the temporary restraining order, or hold an expedited preliminary injunction hearing. As the City acknowledges, the court held a hearing on Dearmore's request on July 6, 2005. The City, of course, received notice that the hearing would take place and attended the hearing. The City had a chance to present its views. The court questioned both sides with respect to the constitutionality of the Ordinance at the hearing and allowed the parties ample time to address the motion to dismiss, as the request for injunctive relief and the motion to dismiss necessarily had overlapping issues.[7]

The City relies on *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir. 1996), to support its lack of notice argument. This reliance, however, is misplaced. In *Kaepa*, the court stated:

> Rule 65(a)(1) provides that "[n]o preliminary injunction shall be issued without notice to the adverse party." We have interpreted the notice requirement of Rule 65(a)(2) to mean that "where factual disputes are presented, the parties must be given a fair opportunity and a meaningful hearing to present their differing versions of those

---

[7]Frankly, the court was disappointed by the dearth of briefing by the parties on the Fourth Amendment issue. The court essentially did its own research regarding the constitutionality of the Ordinance.

> facts before a preliminary injunction may be granted." If no factual
> dispute is involved, however, no oral hearing is required; under such
> circumstances the parties need only be given "ample opportunity to
> present their respective views of the legal issues involved."

*Id*. at 628 (footnote and citations omitted). In this case, the material facts were not in dispute. The issues to be decided were strictly legal in nature. Had it been clear to the court initially that there were no disputed facts, it would have not held a hearing, and would have decided the matter strictly on the written submissions of the parties. Since the parties did not present differing versions of the facts, no oral hearing was even necessary. As the record reflects, both sides had ample opportunity to submit their respective views of the legal issues involved, whether on the request for injunctive relief or the motion to dismiss.

Further, the court determines that the City has forfeited its right to raise any issues – procedurally or substantively – regarding the propriety of the preliminary injunction. When the preliminary injunction was granted, the City could have requested the court to reconsider its ruling, appealed to the Fifth Circuit pursuant to 28 U.S.C. § 1292(a)(1) and Fed. R. App. P. 4(a), or continued to challenge the injunctive relief at the district court level and appeal the final judgment. The City did none of these, and it is too late to do so at this juncture. Rather than raising questions related to the legality of the preliminary injunction, the City discouraged Dearmore's counsel from posting a bond and sought an immediate amendment to the Ordinance to remove the constitutionally repugnant language. The City accepted the court's ruling regarding the preliminary injunction, and did not exercise other options which could easily have addressed and preserved any substantive or procedural challenges it desired to make regarding the preliminary injunction. For these reasons,

the court concludes that the City has forfeited any right to challenge the issuance of the preliminary injunction.[8]

## IV.  Mootness

On May 24, 2006, the court issued an order and directed the parties to submit supplemental briefing on the issue of mootness.  The court ordered the supplemental briefing because of remarks made by the City's counsel at one of the hearings.  In discussing that the legal relationship between the parties had not been materially altered, the City's counsel stated that the City could, if it chose, re-enact the Ordinance made the basis of this lawsuit.  This statement by counsel caused the court some concern because it was not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000).  The question in the court's mind was whether, in light of the statement, this case was really moot.  The court, because of the decision it has reached regarding "prevailing party," finds it unnecessary to revisit the issue of mootness.

## V.  Conclusion

If this were a "catalyst theory" case as the City contends, the court agrees that *Buckhannon* controls.  The court, however, for the reasons previously stated, believes that this case *is not* a "catalyst theory" case, and therefore *Buckhannon* has limited use and application.  If the City's conduct in amending the Ordinance can be termed "voluntary," both *Black's Law Dictionary*  (8th ed.) and *Merriam-Webster's Collegiate Dictionary* (11th ed.) need to update their respective

---

[8]Although courts often use "forfeiture" and "waiver" interchangeably, the court believes "forfeiture," rather than "waiver," is the appropriate term to describe the City's actions.  "Forfeiture" is the "failure to make timely assertion of a right," and "waiver" is the "intentional relinquishment or abandonment of a known right."  *United States v. Olano*, 507 U.S. 725, 733 (1993) (citations omitted); *Douglas v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1420 (5th Cir. 1996).

dictionaries to add a new definition for the meaning of "voluntary." If the City is going to prevail on its argument, it will have to do so at the appellate level, because its approach, as far as this court is concerned, deprives section 1988(b) of all vitality in cases with the same or substantially similar facts as those present in this case.

This court simply does not accept the legal theory that a preliminary injunction can never give rise to "prevailing party" status. The City appears to embrace this theory. Under this approach, no matter how unconstitutionally egregious the enjoined violation or conduct, a governmental entity can readily escape liability, costs, and attorney's fees by simply amending an ordinance to remove the constitutionally offensive provisions and thereby moot the action. This is precisely what we have in this case. The court has seen nothing to indicate that Congress intended such a scheme when it enacted 42 U.S.C. § 1988(b), or that Congress intended for courts to discard common sense and fairness to reach absurd legal results.

For the reasons stated herein, the court determines that Dearmore has obtained the necessary relief to establish that he is a "prevailing party." The City has failed to meet the necessary standard to justify an amendment of the court's judgment or order issued on November 30, 2005. Accordingly, the court **denies** Defendant's Rule 59(e) Motion to Amend Judgment.

The only pending motion is that for attorney's fees filed by Dearmore. As stated previously, "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The parties, through counsel, are **ordered** to confer and make every reasonable effort to resolve the matter of attorney's fees without court intervention. From what the court can ascertain from previous communications between the parties, the amount of attorney's fees is small, and there had been some stipulation regarding attorney's fees. This matter needs to be

resolved.[9]  The parties are therefore **directed** to inform the court in writing by **September 7, 2006** whether they are able to resolve the attorney's fees issue.  If not, the court will proceed to issue a separate order pursuant to Fed. R. Civ. P. 58 on the issue of attorney's fees.

      **It is so ordered** this 29th day of August, 2006.


                                        Sam A. Lindsay
                                        United States District Judge

---

[9]If the City wishes to appeal the merits of the court's ruling, the parties can still stipulate to the amount of attorney's fees and make their stipulation subject to what happens on appeal.

**Memorandum Opinion and Order - Page 14**